___

**SO ORDERED,**



*Judge Selene D. Maddox*

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.
___

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

IN RE: ASHLEY SELMAN FARMS PARTNERSHIP             CASE NO.: 25-10118-SDM

DEBTOR                                                                                     CHAPTER 11

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR ABANDONMENT**
**AND TERMINATION OF STAY AS COMFORT ORDER**

Before the Court is the Motion of AGCO Finance, LLC ("AGCO") seeking abandonment or termination of the automatic stay as to a 2023 Fendt Rogator agricultural sprayer (the "Rogator") (Dkt. #157). AGCO asserts that the Rogator is not property of the Debtor's bankruptcy estate because it is titled in, financed by, and contractually restricted to Selman Planting Co., Inc. ("Selman Planting"), a non-debtor entity. The Debtor, Ashley Selman Farms Partnership, contends that although it is not the named purchaser under the AGCO financing documents, it has exclusively paid for, insured, maintained, and operated the Rogator, giving rise to an interest sufficient to bring the equipment within the scope of the Debtor's bankruptcy estate under 11 U.S.C. § 541[1].

---
[1] All statutory references will be to Title 11 of the United States Code unless indicated otherwise.

The Court conducted an evidentiary hearing and ordered post-hearing briefing on the threshold question of whether the Debtor's asserted interest in the Rogator constitutes property of the estate. For the reasons set forth below, the Court concludes that the Debtor does not hold legal or equitable title to the Rogator. Nevertheless, the Debtor's undisputed possession and use of the equipment constitutes an interest sufficient to invoke the protection of the automatic stay. This ruling is limited to the scope of the automatic stay and the existence of a § 541 interest; it does not determine ultimate ownership, plan treatment, or the effect of confirmation. Those issues may be raised for determination at a later stage of the case if necessary. Accordingly, AGCO's motion is denied without prejudice.

## I. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G), as it concerns the administration of the estate and a motion to terminate the automatic stay. Venue is proper in this district.

## II. BACKGROUND

### A. Procedural Background

The Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on January 15, 2025, and continues to operate its farming business as a debtor-in-possession. AGCO filed the present Motion seeking abandonment of the Rogator and relief from the automatic stay, asserting that the equipment is owned by a non-debtor entity and therefore outside the bankruptcy estate. The Debtor opposed the Motion.

The Court held an evidentiary hearing on September 26, 2025, at which exhibits were admitted and testimony received. At the conclusion of the hearing, the Court directed the parties to submit post-hearing briefs addressing whether the Debtor's asserted interest in the Rogator constitutes property of the estate under § 541, among other issues.

**B. Factual Background**

The material facts are largely undisputed. Selman Planting, a Mississippi corporation and non-debtor, entered into a Retail Installment Contract and Security Agreement (the "Agreement") with AGCO Finance, LLC for the purchase of the Rogator on July 17, 2023. The Agreement identifies Selman Planting as the sole buyer and borrower and grants AGCO a security interest in the equipment. The Agreement also expressly prohibits Selman Planting from selling, leasing, transferring, or otherwise disposing of any interest in the Rogator without AGCO's consent. AGCO perfected its security interest by filing a UCC-1 financing statement.

The Debtor is not a party to the AGCO financing documents. But the evidence shows that since the purchase of the Rogator, the Debtor—not Selman Planting—has made all payments due under the contract, insured the equipment, maintained and repaired it, and used it exclusively in its farming operations. The Debtor's schedules list the Rogator as an asset of the estate and AGCO as a secured creditor, as well as the proposed plan of reorganization. No written lease, assignment, or other agreement exists between Selman Planting and the Debtor concerning the Rogator. There is no evidence that AGCO consented to any transfer of ownership or interest in the equipment. Selman Planting remains an active corporation in good standing under Mississippi law.

The testimony at the hearing reflected that the Debtor and Selman Planting are related entities formed as part of what was described as a "Christmas tree" structure commonly used in agricultural operations to allocate government program benefits among multiple entities. According to the Debtor, although financing transactions were sometimes documented in the name of Selman Planting, the Debtor was the active farming entity that operated equipment and paid expenses through its operating account.

**C. The Parties' Arguments**

AGCO argues that the Rogator is not property of the bankruptcy estate, and the automatic stay therefore does not apply. Its position rests on three primary points. First, AGCO contends that legal ownership and borrower status are dispositive. The Retail Installment Contract and Security Agreement identify Selman Planting, a non-debtor corporation, as the sole buyer and borrower. AGCO emphasizes that the Debtor is not a party to the contract, did not grant AGCO a security interest, and owes no contractual obligation to AGCO. Because property interests are determined by state law, AGCO argues that the Debtor cannot claim an ownership interest in property titled to another legal entity.

Second, AGCO relies heavily on the anti-transfer provisions in the Retail Installment Contract. The agreement expressly prohibits Selman Planting from selling, leasing, transferring, or otherwise disposing of any interest in the Rogator without AGCO's consent. AGCO maintains that, as a matter of law, these provisions foreclose any claim that an ownership or equitable interest could have been transferred to the Debtor. According to AGCO, the Debtor cannot invoke equity to obtain an interest that the contracting party itself was prohibited from conveying.

Third, AGCO argues that the Debtor's payment of the debt and use of the equipment are legally insufficient to create an equitable ownership interest. AGCO asserts that payment by a non-obligor does not create a resulting trust or ownership interest under Mississippi law, particularly where the arrangement appears to have been structured for business or regulatory reasons. AGCO points to testimony regarding the use of multiple farming entities and "Christmas tree" structures to argue that the Debtor should not be permitted to disregard corporate separateness when it becomes inconvenient. AGCO further argues that, because the Rogator is not property of the estate, AGCO is not a creditor of the Debtor and cannot be compelled to participate in the Debtor's Chapter 11 plan. In the alternative, AGCO contends that even if the Court finds some minimal

estate interest, cause exists to grant relief from stay or abandonment because the Debtor has no equity in the Rogator and AGCO lacks adequate protection.

The Debtor responds that the Rogator is property of the estate because the Debtor holds a substantial interest in the equipment arising from its exclusive payment, possession, and use. The Debtor first emphasizes that bankruptcy law defines property of the estate broadly. Citing § 541(a)(1), the Debtor argues that the estate includes all legal and equitable interests, including possessory interests. The Debtor contends that it is undisputed that the Rogator has been used exclusively in the Debtor's farming operations, insured by the Debtor, maintained by the Debtor, and paid for entirely with the Debtor's funds. According to the Debtor, these facts establish at least an equitable or beneficial interest sufficient to bring the Rogator into the estate.

Next, the Debtor argues that the Court should look to the economic realities of the transaction, not merely formal title. The Debtor maintains that Selman Planting Co., Inc. is not an active operating entity and that the Debtor has been the true operating farming business for years. The Debtor characterizes Selman Planting as an entity used historically for financing and administrative purposes, while the Debtor bore the economic burdens and benefits of ownership. On this basis, the Debtor argues that Mississippi equitable principles support recognition of the Debtor's interest.

The Debtor also contends that AGCO's acceptance of payments from the Debtor supports recognition of the Debtor's interest. The Debtor asserts that AGCO knowingly received and applied payments from the Debtor's bank account and therefore cannot now deny the Debtor's relationship to the collateral. While acknowledging that the Debtor is not a signatory to the contract, the Debtor argues that AGCO's course of conduct demonstrates awareness of, and acquiescence in, the Debtor's role as the party bearing the financial obligations associated with the Rogator.

Finally, the Debtor argues that even if the Court concludes that legal title remains with Selman Planting, the Debtor's possessory and equitable interests are sufficient to invoke the automatic stay. The Debtor maintains that questions of ultimate ownership or plan treatment should be resolved later in the case and that granting relief from stay at this stage would improperly strip the estate of an asset central to the Debtor's reorganization efforts.

### III. DISCUSSION

With the facts established and the parties' positions fully briefed, the Court turns to the legal questions presented. The parties' arguments present two distinct questions. First, whether the Debtor holds any legal or equitable interest in the Rogator under Mississippi law, notwithstanding that the financing documents are in the name of Selman Planting. Second, even if the Debtor lacks ownership, whether its undisputed possession, use, and financial responsibility for the equipment constitutes a sufficient interest to bring the Rogator within the scope of property of the estate under § 541, and therefore within the protection of the automatic stay. The Court addresses these issues in turn below, recognizing that the present ruling concerns only the existence and scope of any estate interest for purposes of §§ 541 and 362, and not ultimate ownership or plan treatment.

**A. Governing Legal Standards**

Section 541(a)(1) provides that the commencement of a bankruptcy case creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case," a definition the Fifth Circuit has consistently described as "very broad." 11 U.S.C. § 541(a)(1); *Matter of South Coast Supply Company*, 91 F.4th 376, 381 (5th Cir. 2024). The Supreme Court confirmed this breadth in *United States v. Whiting Pools, Inc.*, holding that § 541(a)(1) "is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code." 462 U.S. 198, 205 (1983).

Congress' intent is equally clear. The legislative history explains that § 541(a)(1) "includes all kinds of property, including tangible or intangible property, causes of action. . . and all other forms of property." H.R.Rep. No. 95-595, at 367-68 (1977); S.Rep. No. 95-989, at 82 (1978); *Whiting Pools*, 462 U.S. at 205; *In re Chambers*, 419 B.R. 652, 666 (Bankr. E.D. Tex. 2009), subsequently aff'd, 544 F.App'x 347 (5th Cir. 2013). Consistent with this framework, the Fifth Circuit has repeatedly held that contingent, speculative, conditional, or equitable interests fall within this broad definition. *Matter of Kemp*, 52 F.3d 546, 550 (5th Cir. 1995); see also *In re Burgess*, 392 F.3d 782, 784 (5th Cir. 2004) (quoting *Kemp*).

At the same time, property interests are created and defined by state law; absent a countervailing federal interest, bankruptcy law does not expand a debtor's rights beyond those existing under applicable non-bankruptcy law. *Butner v. U.S.*, 440 U.S. 48, 55 (1979); see also *Matter of Haber Oil Co.*, 12 F.3d 426, 435 (5th Cir. 1994) (applying *Butner* in bankruptcy context). Therefore, the Court must first determine what interest, if any, the Debtor holds in the Rogator under Mississippi law. The Court then must determine whether that interest: legal, equitable, or possessory, constitutes property of the estate protected by the automatic stay.

Because this matter arises as a contested matter under Federal Rule of Bankruptcy Procedure 9014, the Court's ruling is limited to determining the nature of the Debtor's interest for purposes of § 541 and § 362. Again, nothing in this Opinion adjudicates claims or defenses not properly before the Court, nor does it decide ultimate ownership as between the Debtor and Selman Planting for all purposes.

**B. The Debtor Does Not Hold Legal Title to the Rogator**

The parties agree that Selman Planting is the named buyer and borrower under the Retail Installment Contract and Security Agreement and that the Debtor is not a party to those documents. Thus, the Court finds that the Debtor does not hold legal title to the Rogator. To the extent AGCO's

Motion seeks determination that the Debtor is not the legal title owner of the Rogator, the evidence establishes that point.

Under Mississippi law, legal title to personal property generally follows the intent of the parties to the transaction and is evidenced by the governing contract of sale. See Miss. Code Ann. § 75-2-401(2) (title passes to the buyer at the time and place at which the seller completes performance unless otherwise explicitly agreed). Where a written contract identifies a specific legal entity as the buyer and borrower, that entity holds legal title absent proof of transfer. Here, the Retail Installment Contract and Security Agreement identifies Selman Planting Co., Inc. as the sole buyer and borrower. No evidence reflects any subsequent transfer of title. Accordingly, the Debtor does not hold legal title to the Rogator.

Further, the AGCO financing documents expressly prohibit Selman Planting from selling, leasing, transferring, or otherwise disposing of any interest in the Rogator without AGCO's prior consent. Under Mississippi law, such contractual limitations on the transfer of collateral are enforceable. See Miss. Code Ann. § 75-9-401(a) (a security agreement is effective according to its terms between the parties). The Agreement specifically provides that the buyer, Selman Planting, shall not sell, lease, rent, abandon, transfer, or otherwise dispose of any interest in the Rogator without consent. No evidence shows that AGCO granted such consent.

Even if Selman Planting and the Debtor had an informal understanding regarding use of the equipment, that understanding cannot constitute a transfer of legal title in the Rogator against AGCO. As the Supreme Court has explained, bankruptcy law does not create property rights the Debtor did not hold under applicable non-bankruptcy law. *Butner*, 440 U.S. at 55. Because Mississippi law and the contractual provisions foreclose any transfer without consent, the Debtor holds no legal title in the Rogator for purposes of this case, although the Court expresses no view

on the ultimate ownership question outside the context of this dispute. Accordingly, because no legal title was transferred under Mississippi law, none may be recognized here.

**C. The Debtor Failed to Prove a Resulting Trust or Other Equitable Ownership Interest**

*1. Mississippi law imposes a demanding standard to defeat record title through an implied trust.*

Under Mississippi law, a party seeking to impose an implied trust, whether a constructive trust or a resulting trust, as a means of defeating legal ownership bears an "imposing burden" and must prove the necessary facts by clear and convincing evidence. *Simmons v. Simmons*, 724 So. 2d 1054, 1058 (Miss. Ct. App. 1998) (citing *Shumpert v. Tanner*, 332 So. 2d 411, 412 (Miss. 1976); *Stovall v. Stovall*, 218 Miss. 364, 376, 67 So. 2d 391, 396 (1953)). A resulting trust generally arises when one person pays the purchase price for property, but title is taken in the name of another, such that the record owner holds the property in trust for the payor. *Id.* at 1058 (citing *Brabham v. Brabham*, 84 So. 2d 147, 151 (1955)). Critically, a resulting trust turns on the parties' intent and understanding at the time of the transaction, and it cannot be established by post hoc explanations alone. *Ainsworth v. Plunk*, 343 So. 3d 1108, 1113-14, (Miss. Ct. App. 2022).

*2. Application to the Rogator.*

Here, the Debtor relies primarily on its payments and use of the Rogator to argue that the Court should recognize an equitable ownership interest. Those facts may demonstrate that the Debtor bore the economic burdens of operating the Rogator, but they do not satisfy Mississippi's clear-and-convincing standard for imposing an implied trust to defeat record title. The record contains no written agreement between Selman Planting and the Debtor establishing that title was taken in Selman Planting's name for the Debtor's benefit. Nor does the record contain evidence of a contemporaneous understanding at the time Selman Planting entered the AGCO financing transaction that Selman Planting would hold title in trust for the Debtor.

In *Simmons*, the Mississippi Court of Appeals emphasized that courts are cautious in using implied trusts to reallocate title and require clear and convincing proof. 724 So. 2d at 1059. The court there noted that, even where a party may have "presented a much stronger case" on payment and possession facts, equitable relief may still be denied where public policy counsels against undoing the consequences of an arrangement designed for other purposes. *Id*. at 1059-61. Similarly, the Debtor's evidence of payment and use does not establish the requisite trust relationship under Mississippi law.

*Simmons* further relied upon the Restatement (Second) of Trusts § 444, recognizing that where property is placed in another's name to accomplish an improper purpose, a resulting trust will not arise if the policy against unjust enrichment is outweighed by the policy against granting equitable relief to one who participated in the arrangement. *Simmons*, 724 So. 2d at 1060. The Restatement explains that the principle most commonly applies where a purchaser takes title in another's name to shield assets from creditors or to obtain some collateral advantage.

The Court makes no finding that the transaction at issue here was fraudulent or illegal, and to the Court's knowledge, AGCO has not alleged fraud. The testimony does reflect that the structuring of entities and financing arrangements was purposeful and deliberate. The Court agrees with AGCO that equity does not permit a party to rely upon the formal separateness of entities for certain advantages yet disregard that separateness when convenient. To impose a resulting trust under these circumstances would require the Court to disregard the very structure the Debtor chose to employ. The Court need not say more on this point, and it will not impose or find a trust exits in this case.

**D. The Debtor's Possession and Use Establish a Limited Interest Included in the Estate**

Although the Debtor does not hold legal title and has not established equitable ownership under Mississippi law, the inquiry under § 541 does not end there. Section 541's broad reach

encompasses more than fee ownership. The Supreme Court has emphasized that Congress intended this provision to sweep broadly and to include a wide range of interests, including those that are possessory, contingent, or less than full ownership. *Whiting Pools*, 462 U.S. at 204-05.

As the Fifth Circuit explained in *Kemp*, even a conditional or equitable interest may constitute estate property. 52 F.3d at 550. The "conditional, future, speculative, or equitable nature of an interest," the court held, does not prevent it from falling within § 541's scope. *Whiting Pools* further recognizes that the estate may have a possessory interest sufficient to draw property into the bankruptcy case, even where a secured creditor holds superior rights, with Congress providing protection to such creditors through the mechanisms of adequate protection and relief from stay. 462 U.S. at 204-07.

Courts in this circuit similarly focus on the debtor's rights under the relevant agreement and applicable law when determining whether a particular interest constitutes estate property. See *In re Bailey*, 314 B.R. 103, 108-09 (Bankr. N.D. Miss. 2004) (explaining that a determination of whether proceeds were property of the estate required examining the agreement and whether payment could inure to the debtor's pecuniary benefit). Here, the evidence establishes that the Debtor was in actual possession of the Rogator and using it in its farming operations at the time of filing its petition. The Debtor insured the equipment, maintained it, and made the payments due under the financing arrangement Selman Planting had with AGCO. While these facts are insufficient to establish legal title or an implied trust under Mississippi law, they demonstrate that the Debtor held a present possessory interest and exercised control over the equipment in the ordinary course of its business.

Section 541 does not require full ownership; it requires only that the debtor holds some legal or equitable interest at the commencement of the case. The Debtor's possessory and use rights, however limited and subordinate to AGCO's lien and Selman Planting's title, are interests

that existed at the petition date. Under the expansive framework articulated in *Whiting Pools* and *Kemp*, those interests fall within the broad definition of property of the estate.

Recognizing this limited estate interest does not determine ultimate ownership, alter the contractual rights of AGCO, or impair AGCO's lien. It simply acknowledges that § 541 brings into the estate whatever interests the Debtor actually holds, leaving the relative rights and remedies of the parties to be addressed through the structured protections of the Bankruptcy Code.

**E. The Rogator is Property of the Estate to the Extent of the Debtor's Possessory Interest, and the Automatic Stay Applies**

Because the Debtor's limited interest in the Rogator constitutes property of the estate under § 541(a)(1), the automatic stay applies. Section 362(a)(3) stays "any act to obtain possession of property of the estate . . . or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The Fifth Circuit has made clear that the scope of the automatic stay turns on whether the debtor holds a legal or equitable interest in property under § 541. In *In re MortgageAmerica Corp.*, 714 F.2d 1266 (5th Cir. 1983), the court explained that § 541 defines what constitutes property of the estate and that § 362 operates to protect those interests from unilateral creditor action. *Id.* at 1275–76.

The Fifth Circuit's decision in *In re Chesnut*, 422 F.3d 298 (5th Cir. 2005), is particularly instructive. There, the debtor husband filed bankruptcy and asserted that certain real property, purchased during marriage but titled solely in his non-debtor wife's name and subject only to her lien obligations, constituted community property in which he held an ownership interest. *Id.* at 300–01. Although the debtor was not a record title holder and was not liable on the underlying note, he claimed that his alleged community property interest rendered the property part of his bankruptcy estate and therefore protected by the automatic stay. *Id.* at 301–03.

The creditor proceeded with foreclosure, arguing that the property was not covered by the stay because the debtor's claimed interest was defective. *Id.* at 301. The Fifth Circuit rejected that approach, holding that the automatic stay applies where the debtor asserts an arguable claim of right in the property and that creditors act at their peril if they unilaterally determine that the stay does not apply. *Id.* at 301, 306–08. The court emphasized that allowing creditors to retroactively narrow the scope of the stay based on their own assessment of the debtor's property rights would undermine the orderly process contemplated by the Bankruptcy Code. *Id.* Here, the Debtor's continuous possession, use, maintenance, and payment history with respect to the Rogator establish at minimum a present possessory interest and a colorable claim to continued possession.

Under *Chesnut*, however, the existence of an arguable interest is sufficient to require a creditor to seek relief from the bankruptcy court before acting against the property. As persuasive authority, the Second Circuit has similarly held that even a debtor's possessory interest, standing alone, may suffice to trigger the protection of the automatic stay. In *Bayview Loan Servicing LLC v. Fogarty (In re Fogarty)*, 39 F.4th 62 (2d Cir. 2022), the court concluded that a post-petition foreclosure sale violated § 362(a)(3) where the debtor retained a possessory interest in the property at the commencement of the case. *Id.* at 71–72. While not binding in this Circuit, *Fogarty* is consistent with the Fifth Circuit's reasoning in *Chesnut* that creditors must obtain relief from the stay when estate interests, legal, equitable, or possessory, are at issue.

Accordingly, because the Debtor held at least a possessory interest in the Rogator as of the petition date, that interest became property of the estate under § 541(a)(1), and the automatic stay applies to acts to obtain possession or exercise control over the Rogator. Any further determination of the nature or extent of that interest must proceed within the framework of § 362(d) and related provisions of the Bankruptcy Code.

**F. Relief From Stay and Abandonment**

AGCO's primary theory is that the Rogator is not property of the estate and therefore the stay does not apply. The Court clearly rejects that threshold contention. As concluded above, the Debtor holds a limited possessory interest (or, at minimum an arguable claim to continued possession) that constitutes property of the estate under § 541 and is protected by the automatic stay. Because the parties' briefing and the hearing focused primarily on whether the Rogator is estate property, the record has not been fully developed as to traditional stay-relief considerations under § 362(d), including adequate protection, equity, or necessity to an effective reorganization. Under these circumstances, the Court finds it appropriate to deny any further relief requested in the Motion without prejudice.

AGCO remains free to renew its request under § 362(d) supported by evidence directed to those statutory grounds. Similarly, if a final adjudication of ownership beyond the limited § 541 interest is necessary to administration of the case, the parties may pursue appropriate procedures consistent with the Bankruptcy Rules. The Court's ruling today resolves only the threshold property of the estate issue and does not preclude further proceedings on a properly developed record.

**G. Scope of the Court's Ruling**

This ruling determines that the Debtor does not hold legal or equitable title to the Rogator but does hold a limited possessory interest that is property of the estate. The Court makes no determination of ultimate ownership between the Debtor and Selman Planting for all purposes. Nor does it determine AGCO's proper treatment under a Chapter 11 plan, the effect of confirmation, or the extent of adequate protection to which AGCO may be entitled. The Court's denial of the Motion is without prejudice to AGCO seeking relief from stay on other grounds, or

to any party seeking a more comprehensive determination of rights through an appropriate procedural vehicle.

## IV. CONCLUSION

For the above reasons, the Court concludes that the Debtor does not hold legal title to the Rogator and failed to prove a resulting trust or other equitable ownership interest sufficient to disturb record title under Mississippi law. Nevertheless, the Debtor's undisputed possession and use of the Rogator constitutes a limited interest that is property of the estate under 11 U.S.C. § 541(a)(1), or at minimum arguable property of the estate, such that the automatic stay applies. Accordingly, AGCO Finance, LLC's Motion (Dkt. #157) is **DENIED WITHOUT PREJUDICE.**

##END OF ORDER##